UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HALE-HALSELL COMPANY, OFFICIAL UNSECURED CREDITORS COMMITTEE, and HALE-HALSELL COMPANY CREDITORS TRUST, ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 08-CV-0089-CVE-PJC |
| CREDITORS UNION STATE BANK & TRUST, et al., ) ) ) ) | |
| Defendants. ) | |

## OPINION AND ORDER

This case was originally filed as an adversary proceeding in the United States Bankruptcy Court for the Northern District of Oklahoma by Hale-Halsell Company ("Hale Halsell") and the Official Unsecured Creditors Committee ("the Committee").[1] All claims in the adversary proceeding, except for one crossclaim, were resolved by the bankruptcy court and this Court withdrew the reference of the adversary proceeding on March 20, 2008. Dkt. # 7. The crossclaim was filed by a group of former Hale-Halsell employees and their beneficiaries under certain life insurance policies[2] against Robert D. Hawk, Sr. ("Hawk"),[3] Hale-Halsell's former president, for breach of fiduciary duty under the Employee Retirement Income Security Act of 1974, 29 U.S.C.

---

[1] The adversary proceeding was filed by Hale-Halsell and the Committee. However, the bankruptcy court has approved a plan of liquidation in Hale-Halsell's bankruptcy proceedings and the Hale-Halsell Company Creditors Trust ("the Trust") is the successor-in-interest to Hale-Halsell.

[2] The parties refer to the crossclaimants as the "Wallace Defendants" and, for consistency with the parties' filings, the Court will refer to the crossclaimants as the Wallace Defendants throughout this Opinion and Order.

[3] Hawk died while this litigation was pending and the personal representative of his estate, Sandra L. Hawk, filed a suggestion of death. Dkt. # 16. Sandra L. Hawk has been substituted as the proper party against whom relief is sought.

§ 1101 et seq. ("ERISA"). The Court held a status conference on May 12, 2008 to address the status of the bankruptcy proceedings and scheduling matters. Two issues related to the Court's subject matter jurisdiction arose at the status conference. First, the Wallace Defendants' crossclaim is based on ERISA, but it was not clear that Hale-Halsell actually provided its employees benefits under an ERISA plan and, if it did, whether the plan was terminated as a result of the bankruptcy proceedings. Second, Hawk asserts that the Wallace Defendants lack standing to recover damages for breach of fiduciary duty, because such recovery accrues to the benefit plan rather than to the individual plan participants. The parties have submitted simultaneous briefs and responses on these issues.[4] Hawk has filed a Motion and Brief to Correct the Court's Opinion and Order Pursuant to Fed Rule 60(a) Fed. R. Civ. P. (Dkt. # 9)[5] and the Wallace Defendants have filed an Objection to the Supplement to Brief of the Hale-Halsell Creditors' Trust (Dkt. # 31) and Motion to Strike (Dkt. # 33).[6]

---

[4] The Wallace Defendants' opening brief addresses the effect of their settlement with Hale-Halsell and other parties, but this issue is not relevant to subject matter jurisdiction and will not be considered in this Opinion and Order.

[5] Hawk asks the Court to correct its opinion and order withdrawing the reference of the Wallace Defendants' crossclaim to reflect that he may have a right to seek indemnification against the bankruptcy estate. However, the Court did not preclude Hawk from seeking indemnification from the bankruptcy estate and he misconstrues the Court's opinion and order (Dkt. # 7). More importantly, as will be discussed below, the Court lacks subject matter jurisdiction over this case and may not make binding factual findings on the merits of any party's claim or defense. Therefore, Hawk's motion under Fed. R. Civ. P. 60(a) (Dkt. # 9) is moot.

[6] The Wallace Defendants object to the supplement (Dkt. # 30) and ask the Court to strike it. The supplement contains complete copies of two exhibits cited by the Wallace Defendants. To the extent that the supplement contains additional argument, the objection is granted and the Court will disregard any such arguments and refer solely to the arguments in the Trust's opening and response briefs. Concerning the exhibits provided by the Trust, the Wallace Defendants may not complain that the Trust has submitted complete copies of exhibits when the Wallace Defendants describe the attached exhibits as "unobjectionable" and note that they possess copies of this evidence. Although the Wallace Defendants claim they could have submitted this evidence on their own, it was reasonable for the Trust to submit complete documents when the partial documents provided by the Wallace Defendants could be construed as misleading. Thus, the objection (Dkt. # 31) is granted in part and denied in part, and the motion to strike (Dkt. # 33) is denied.

**I.**

The Trust states that Hale-Halsell began providing a life insurance benefit to its employees in 1984 in the form of a $50,000 post-death benefit. The Trust claims that Hale-Halsell purchased life insurance on the lives of its employees prior to retirement to obtain lower premium rates on the insurance policies. Based on documents submitted by the Trust and the Wallace Defendants, it appears that Hale-Halsell purchased individual life insurance policies for its employees through Business Men's Assurance Company of America ("BMA"). See Dkt. # 27, Exs. B, C; Dkt. # 30, Ex. 1. The employee was the insured and could designate a beneficiary for the death benefit, but Hale-Halsell paid the premiums and owned the policy during the employee's life. Dkt. # 30, Ex. 1, at 2. Based on the evidence submitted by the parties, it appears that Hale-Halsell purchased a separate policy for each employee, and it does not appear that Hale-Halsell purchased a group insurance plan through BMA or formally adopted an ERISA plan. Even though Hale-Halsell clearly provided some type of death benefit to its employees beginning in 1984, the Trust states that the life insurance benefit for Hale-Halsell's employees was not memorialized in a written plan until 1998.

In 1998, the Trust claims that Hale-Halsell adopted the Split-Dollar Agreement and this agreement was the formal written plan through which Hale-Halsell provided life insurance benefits to its employees. The Wallace Defendants dispute that the Split Dollar Agreement is the source of their right to life insurance benefits, and suggest that some other plan or document, such as the BMA policies, were the actual source of their promised life insurance benefits. The Split-Dollar Agreement included a list of insurance policies that were subject to the agreement, but it did not create a group insurance plan for Hale-Halsell employees. According to the list, Hale-Halsell obtained life insurance for its employees under individual policies from Canada Life Insurance

3

Company and Security Life of Denver Life Insurance Company. Dkt. # 30, Ex. 2, at 9-11. In the Split-Dollar Agreement, Hale-Halsell agreed to pay the premiums for each insurance policy and was designated as the owner of each policy, and the insured employee had the right to name a beneficiary for any death benefits paid under a life insurance policy subject to the Split-Dollar Agreement. Hale-Halsell retained the right to "pledge or assign [each policy], subject to the terms and conditions of [the Split-Dollar Agreement], for the sole purpose of securing a loan from the Insurer or from a third party." Id. at 2. Each policy subject to the Split-Dollar Agreement would automatically terminate during an employee's life upon "(a) total cessation of the Corporation's business; (b) bankruptcy, receivership or dissolution of the Corporation; or (c) the failure of any party to this Agreement to timely pay its portion of the [p]olicy premium." Id. at 4. If a policy subject to the Split-Dollar Agreement terminated during the employee's lifetime, the employee had the option to purchase the policy from Hale-Halsell. Id.

Hale-Halsell pledged the insurance policies listed in the Split-Dollar Agreement to Missouri State Bank in May 2002 as collateral for a $2 million loan. In February 2004, Hale-Halsell defaulted on the loan. Citizens Union State Bank & Trust ("Citizens Union"), the successor-in-interest to Missouri State Bank, demanded delivery of the insurance policies and Hale-Halsell complied. Hale-Halsell filed for relief under Chapter 11 of the United States Bankruptcy Code on March 22, 2004 but, before Hale-Halsell filed for bankruptcy, Citizens Union had obtained approximately $1 million from the insurer as the cash value of the assigned insurance policies.[7] The bankruptcy court

---

[7] The Trust states that Citizens Union had negotiated checks in the amount of $600,000 and also possessed $400,000 of non-negotiated checks. Dkt. # 21, at 3. The bankruptcy court ordered Citizens Union to negotiate the checks in its possession and deposit all of the proceeds in a separate account during the adversary proceeding.

subsequently ordered Citizens Union to deposit the funds into an account until the bankruptcy court could determine who had the right to retain the cash value of the insurance policies.

Hale-Halsell and the Committee filed an adversary proceeding against all parties with an interest in the life insurance proceeds, including Citizens Union, 61 retired employees, and 115 designated beneficiaries. They argued that Hale-Halsell's pledge of the insurance policies to Missouri State Bank was invalid and the transfer should be avoided under the Bankruptcy Code, because Hale-Halsell did not obtain the consent of the insured before pledging the policies. They also argued that their claim for the insurance proceeds had priority over any claims to the proceeds by retired employees or beneficiaries. The Wallace Defendants brought counterclaims against Hale-Halsell and crossclaims against Hawk seeking recovery of the cash value of the policies under ERISA. On August 4, 2005, the bankruptcy court found that Hale-Halsell's pledge of life insurance policies was valid under the terms of the Split-Dollar Agreement and Citizens Union could retain the cash value of the insurance policies. The bankruptcy court dismissed all of Hale-Halsell's claims.

The Committee submitted a plan of liquidation, called the Fourth Amended Modified Plan of Liquidation of Hale-Halsell Company ("the Plan"), and the Plan was confirmed by the bankruptcy court on March 5, 2007. The Plan included a settlement of all claims among Hale-Halsell, Citizens Union and the Wallace Defendants concerning the proceeds of the disputed insurance policies:

> <u>Class 9: Former Employee Insurance Claims</u>. The Claims of Class 9 Former Employee Insurance Claims will be satisfied by each Class 9 Creditor receiving a cash payment of $10,000 or the option to make an election instead to receive an Allowed Unsecured Claim of $20,000. To the extent an election is not made, then such Claimant shall receive the sum of $10,000 in full satisfaction of his or her claim under Class 9. . . . Upon Confirmation, all such Claims of Class 9 Creditors with Claims asserted against Hale-Halsell or through Hale-Halsell against Citizens Union,

> including, without limitation, all Claims in the Citizens Union Litigation shall be
> released, and the Citizens Union Litigation will be dismissed with prejudice both as
> to Hale-Halsell and as to Citizens Union Bank . . . .

Dkt. # 3-2, at 15-16. This settlement resolved all pending claims in the adversary proceeding except for the Wallace Defendants' ERISA crossclaim against Hawk for breach of fiduciary duty.

In the Wallace Defendants' remaining crossclaim against Hawk, it is clear that they are attempting to recover the cash value of insurance policies subject to the Split-Dollar Agreement. The policies referenced in the Wallace Defendants' crossclaims are "certain life insurance policies issued by Security Life of Denver Insurance Company, American General Life Insurance Company and/or Canada Life Assurance Company on the lives of retired Hale-Halsell employees . . . " Dkt. # 3, at 69. In their prayer for relief, the Wallace Defendants seek:

> all funds originating from the conversion of said life insurance policies . . . held in
> trust for the benefit of the Wallace Defendants, that this Court order said funds
> distributed to each Wallace Defendant in proportion to the amount of funds
> generated from the surrender of each such person's policy and that nothing should
> go to Plaintiff Hale-Halsell, its Unsecured Creditors's Committee Robert D. Hawk
> or the Defendant Citizens Union State Bank, that this Court Order [sic] such other
> and further relief to the full extent allowed by 29 U.S.C. § 1132 and 29 U.S.C. §
> 1109(a).

Dkt. # 3, at 73. The Wallace Defendants allege that several employees received a death benefit under a welfare benefits plan provided by Hale-Halsell before the Split-Dollar Agreement was executed, and this suggests that insurance policies other than those listed in the Split-Dollar Agreement are the true source of their right to a death benefit. However, they also refer to Hale-Halsell's assignment of policies to Missouri State Bank pursuant to the Split-Dollar Agreement as the event giving rise to their crossclaim. Id. at 71.

The Wallace Defendants filed a motion to withdraw the reference of the adversary proceeding from the bankruptcy court. The bankruptcy court found that the Wallace Defendants'

remaining crossclaim against Hawk was a "non-core claim that may be 'related to' the [Hale-Halsell] bankruptcy" and this claim could have been filed in federal district court. Id. at 92. The Wallace Defendants filed a motion to withdraw the reference in this Court (Dkt. # 2), which was granted. This Court held a status conference on May 12, 2008, and the two issues related to subject matter jurisdiction arose. Dkt. # 15. The parties have submitted opening and response briefs addressing the issues.[8]

## II.

The Court asked the parties to brief two issues: (1) whether Hale-Halsell had an ERISA plan to provide life insurance benefits to its employees and, if so, whether the status of the plan has been affected by the bankruptcy proceedings; and (2) whether the Wallace Defendants have standing to proceed with a claim for breach of fiduciary duty against Hawk's estate for monetary damages on their own behalf.

## A.

The parties have submitted evidence concerning the existence of an ERISA plan and they dispute whether the Split-Dollar Agreement should be treated as an ERISA plan. The Wallace Defendants argue that the Split-Dollar Agreement is not an ERISA plan and that Hale-Halsell actually provided life insurance to its employees through the BMA policies. Hawk claims that the Split-Dollar Agreement is the only evidence that Hale-Halsell maintained an ERISA plan at the time

---

[8] The Trust has also submitted briefs on these two issues. Although the Trust is not a party to the Wallace Defendants' remaining crossclaim, the Trust, as successor-in-interest to Hale-Halsell, was a party in the adversary proceeding and the Trust maintains any documents concerning life insurance benefits Hale-Halsell provided to its employees. The Trust appeared through counsel at the status conference and the Court authorized all parties present to file briefing, and there is nothing improper about the Trust's submissions. To address the Wallace Defendants' concern that the Trust lacks standing to appear before this Court, Hawk has adopted the Trust's briefing. See Dkt. ## 20, 34, 35.

Hale-Halsell declared bankruptcy, and there is no evidence that Hale-Halsell continued to pay premiums on the BMA policies after the Split-Dollar Agreement was executed.

The Wallace Defendants claim that the BMA policies, rather than the policies listed in the Split-Dollar Agreement, are the relevant insurance policies for their breach of fiduciary duty crossclaim against Hawk. The Trust agrees that Hale-Halsell once provided its employees death benefits through policies issued by BMA, and has provided a complete copy of such a policy. See Dkt. # 30, Ex. 1. The documents produced by the Wallace Defendants show that Hale-Halsell may have provided this benefit as far back as 1984, and they claim that they believed the BMA policies were the source of their death benefit. They cite a letter from Hale-Halsell to James E. Garrison, a former Hale-Halsell employee, which states that Garrison intended to retire on May 31, 1997 and he would be "covered with life insurance in the amount of $50,000.00 for the remainder of [his] life." Dkt. # 27, Ex. E. However, this letter does not reference the BMA policies or any other specific life insurance policy, and it is not clear that the letter is referring to a BMA policy. The Wallace Defendants have submitted affidavits from two former employees who state that a $50,000 life insurance policy was a major part of their retirement package and they were never informed of, and did not consent to, the Split-Dollar Agreement. Dkt. # 27, Exs. F, G.

The Wallace Defendants' argument concerning the continued existence and viability of the BMA polices is irrelevant to their claim for breach of fiduciary duty against Hawk. In their crossclaim, they allege that Hawk, in his capacity as Hale-Halsell's president, assigned "certain life insurance policies issued by Security Life of Denver Insurance Company, American General Life Insurance Company and/or Canada Life Assurance Company" to Missouri State Bank. Dkt. # 3, at 69. Even if the Court were to assume that the BMA policies were still in existence, the Wallace

Defendants do not allege that Hawk breached his fiduciary duty by improperly using the BMA policies as collateral for a loan. Therefore, it is clear that any alleged breach of fiduciary duty does not concern the BMA policies and the relief the Wallace Defendants seek is unrelated to the continued existence of these policies.

Hawk argues that the Split-Dollar Agreement satisfied all requirements for a welfare benefits plan under ERISA and, even if another plan existed before 1998, Hale-Halsell clearly intended to replace any pre-existing plan with the Split-Dollar Agreement. If the Split Dollar Agreement creates an ERISA plan, the parties do not dispute that it would create an employee welfare benefit plan, rather than a defined benefit plan, under ERISA.[9] The premiums for the policies listed in the Split-Dollar Agreement were paid by Hale-Halsell and employees did not pay the premiums or make any contribution to this retirement benefit. The Tenth Circuit has stated that an employee welfare benefit plan is "(1) a 'plan, fund, or program' (2) established or maintained (3) by an employer . . . (4) for the purpose of providing [death] benefits . . . (5) to participants or their beneficiaries." Peckham v. Gem State Mut. of Utah, 964 F.2d 1043, 1047 (10th Cir. 1992) (quoting Donovan v. Dillingham, 688 F.2d 1367, 1371 (11th Cir. 1982)). The Split Dollar Agreement satisfies all of these requirements.

---

[9]  An employee welfare benefit plan is defined as "any plan, fund, or program which was heretofore or is hereafter established by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) . . . benefits in the event of sickness, accident, disability, death or unemployment . . . ." 29 U.S.C. § 1002(1). On the contrary, a "defined benefit plan" refers to a "pension plan other than an individual account plan . . . ." 29 U.S.C. § 1002(35). The key difference between the two types of plans is that an employer may terminate a welfare benefits plan without notice to or consent by its employees, while a defined benefit plan creates a vested benefit for employees that may be terminated only in compliance with ERISA and its regulations. See Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 78 (1995); Chiles v. Ceridian Corp., 95 F.3d 1505, 1516 (10th Cir. 1996).

The Split-Dollar Agreement states that Hale-Halsell agreed to provide life insurance policies to its employees and it would maintain the policies by paying the premiums on such policies. The program was managed by Hale-Halsell, but it was established for the purpose of providing life insurance benefits to Hale-Halsell employees. Thus, each of the elements of Peckham is satisfied and the Split-Dollar Agreement may be considered an employee welfare benefit plan under ERISA.

The Wallace Defendants assert that the Split-Dollar Agreement does not create an ERISA plan, because the Split-Dollar Agreement did not expressly amend the BMA policies which they believed existed. This argument is irrelevant. The Split-Dollar Agreement is an ERISA plan in its own right, regardless of the current viability of the BMA policies, and the Court may treat the Split-Dollar Agreement as an ERISA plan even if the Split-Dollar Agreement was not expressly executed to amend the BMA policies. The relevant issue for the Wallace Defendants' crossclaim against Hawk is whether an ERISA plan still exists. The Split-Dollar Agreement provides for termination of benefits without notice to plan beneficiaries in the event of "(a) total cessation of the Corporation's business; (b) bankruptcy, receivership or dissolution of the Corporation; or (c) the failure of any party to this Agreement to timely pay its portion of the Policy premium." Dkt. # 30, Ex. 2, at 4. The Split-Dollar Agreement also permitted Hale-Halsell to terminate an employee's death benefits "while no premium is overdue . . . by written notice to the other parties hereto." Id. Hale-Halsell filed for bankruptcy and the Plan was confirmed by the bankruptcy court. Under its own terms, the Split-Dollar Agreement ceased to be an ERISA plan and the Wallace Defendants may not rely on the Split-Dollar Agreement to seek damages for breach of fiduciary duty. Consequently, the Wallace Defendants have not shown that they are requesting relief for breach of fiduciary duty against Hawk in connection with an existing ERISA plan.

**B.**

The parties dispute whether the Wallace Defendants may pursue equitable relief on their own behalf for Hawk's alleged breach of fiduciary duty. The Wallace Defendants assert that they may proceed with a claim for breach of fiduciary duty seeking damages on their own behalf. Hawk claims that ERISA permits a claim for breach of fiduciary duty, but any damages must be paid directly to the ERISA plan for the benefit of all participants. Because an ERISA plan no longer exists, Hawk argues that the Wallace Defendants' crossclaim should be dismissed.

ERISA permits a claim for breach of fiduciary duty under 29 U.S.C. § 1109(a), and the Wallace Defendants cite this section as the basis for their crossclaim against Hawk. See Dkt. # 3, at 73. Section 1109(a) provides that:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, <u>and to restore to the plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary</u>, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a) (emphasis added). This provision has been construed narrowly and recovery under this section is limited to recovery on behalf of the plan. Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134 (1985); Nichols v. Alcatel USA, Inc., 532 F.3d 364, 375-76 (5th Cir. 2008); Hein v. FDIC, 88 F.3d 210 (3d Cir. 1996); Walter v. Int'l Ass'n of Machinists Pension Fund, 949 F.2d 310, 317 (10th Cir. 1991); Bryant v. Int'l Fruit Prods. Co., Inc., 886 F.2d 132, 134-35 (6th Cir.

1989). Section 1109(a) provides that "other equitable or remedial relief" may be available.[10] However, such relief must be equitable in nature and an award of compensatory damages is not authorized by §§ 1109(a), 1132(a)(2), or 1132(a)(3) of ERISA. Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002); Lind v. Aetna Health, Inc., 466 F.3d 1195, 1200 (10th Cir. 2006); Callery v. United States Life Ins. Co. in City of New York, 392 F.3d 401, 404-06 (10th Cir. 2004); Millsap v. McDonnell Douglas Corp., 368 F.3d 1246, 1252-54 (10th Cir. 2004).

The Wallace Defendants cite Varity Corporation v. Howe, 516 U.S. 489 (1996), and claim that it permits a plan participant to seek individual relief for an alleged breach of fiduciary duty under 29 U.S.C. § 1132(a)(3). In Varity, a group of beneficiaries under an employer-provided benefits plan sued their employer and the plan administrator for breach of fiduciary duty and alleged that the defendants tricked them into forfeiting their right to benefits. Id. at 492. Before the Supreme Court, the employer and plan administrator challenged the district court's decision to authorize reinstatement to the benefits plan as equitable relief under § 1132(a)(3).[11] Id. at 495. The Supreme Court found that a plan participant could obtain relief in the form of reinstatement as equitable relief, even though § 1109 appears to limit relief to restoration to the benefit plan of misappropriated funds. The Tenth Circuit has interpreted Varity narrowly and, in the context of a breach of fiduciary duty claim, has held that Varity authorizes an individual plaintiff to request

---

[10]  The Supreme Court has recognized that participants in a defined contribution plan, into which plan participants pay their own funds and the plan fiduciary manages the assets, may seek individual relief for alleged mismanagement of plan assets. LaRue v. DeWolff, Boberg & Associates, Inc., 128 S. Ct. 1020 (2008). However, either the BMA policies or the policies referenced in the Split-Dollar Agreement are welfare benefit plans, not defined contribution plans, and LaRue does not provide a cause of action to the Wallace Defendants for individual monetary relief.

[11]  Although the district court also awarded "certain monetary relief" to the plaintiffs, this award was not reviewed by the Supreme Court, and the Supreme Court did not authorize an award of individual monetary damages under § 1132(a)(3).

equitable relief in the form of reinstatement to a plan, not the recovery of individual monetary damages. Callery, 392 F.3d at 406. In this case, reinstatement is not an option, because the Split-Dollar Agreement creating the ERISA plan under which the Wallace Defendants' right to relief arises has terminated under its express terms. The Wallace Defendants cite no other authority suggesting that participants of an ERISA plan may obtain individual relief, rather than reimbursement of the ERISA plan, under § 1109(a).

In addition to the limitation on relief imposed by § 1109(a), there are other problems with the Wallace Defendants' factual and legal theories. First, the Wallace Defendants are attempting to recover against Hawk for his alleged breach of fiduciary duty because, in his capacity as Hale-Halsell's president, he transferred possession of the subject insurance policies to Missouri State Bank. However, the bankruptcy court determined that Hale-Halsell was authorized to make this transfer under the Split-Dollar Agreement. If Hale-Halsell was authorized to make this transfer, it is not clear how Hawk's actions could be illegal if he made this transfer in his capacity as the company's president. In any event, the Wallace Defendants' remedy was to appeal the bankruptcy court's decision to this Court or to the Bankruptcy Appellate Panel of the Tenth Circuit Court of Appeals and, as this is not a bankruptcy appeal, this Court lacks jurisdiction to review the bankruptcy court's ruling that Hale-Halsell's transfer of the policies was authorized under the Split-Dollar Agreement.

Second, the Wallace Defendants argue that the BMA policies, not the policies listed in the Split-Dollar Agreement, are the relevant insurance policies for their crossclaim. The Wallace Defendants have produced some evidence that Hale-Halsell provided benefits under the BMA policies to its employees beginning in 1984, and evidence produced by the Trust suggests that Hale-Halsell may have paid the premiums for the policies into the mid-1990s. However, there is no

13

evidence that Hale-Halsell continued to pay the premiums on the BMA policies after it adopted the Split-Dollar Agreement, and there is no factual basis for the Court to find that such policies still exist. This conclusion is bolstered by Hale-Halsell's bankruptcy and its non-viability as a continuing business enterprise. There is also no evidence that Hale-Halsell used the cash value of the BMA policies as collateral for its loan from Missouri State Bank. The Wallace Defendants are attempting to recover the cash value of insurance policies listed in the Split-Dollar Agreement. Even if Hale-Halsell once provided life insurance to its employees under BMA policies, the cash value of the BMA policies is not at issue in the Wallace Defendants' crossclaim.

Finally, the Wallace Defendants argue that they are seeking equitable relief under § 1132(a)(3) and such relief is permissible in addition to any remedies provided by §§ 1109 and 1132(a)(2). Even if the Court were to find that the Wallace Defendants are entitled to individual relief, the relief they seek is not equitable and is not available under § 1132(a)(3). They request relief from Hawk in an amount equal to the cash value of the insurance polices that were transferred to Missouri State Bank. However, this is simply another way of seeking compensatory damages. As the Supreme Court has noted, equitable relief normally takes the form of mandamus, injunctive relief, or restitution; money damages, the classic form of legal relief, are not available under ERISA. Mertens v. Hewitt Assoc., 508 U.S. 248, 255 (1993). The Wallace Defendants did not pay the premiums on the subject policies and Hale-Halsell did not assign funds to Missouri State Bank that were rightfully the property of the Wallace Defendants. Under the Split-Dollar Agreement, the Wallace Defendants were entitled to death benefits, but they did not pay to maintain the policies and the cash value of the policies belonged to Hale-Halsell. Therefore, Hawk did not retain or assign any funds held in trust for the Wallace Defendants, and an award of damages in the amount of the

cash value of the policies would be nothing more than compensatory damages for Hawk's alleged breach of fiduciary duty.

The Court finds that the Wallace Defendants lack standing because the Wallace Defendants have not shown that the relief they seek is available under ERISA. Alexander v. Anheuser Busch Co., Inc., 990 F.2d 536, 539 (10th Cir. 1993); Raymond v. Mobil Oil Corp., 983 F.2d 1528, 1534 (10th Cir. 1993); Click v. Sunoco, Inc., 2007 WL 593618 (N.D. Okla. Feb. 21, 2007). The ordinary remedy for breach of fiduciary duty under § 1109(a) is reimbursement of the ERISA plan. However, the Split-Dollar Agreement has terminated by its own terms due to Hale-Halsell's bankruptcy and the subject life insurance policies no longer exist. Therefore, reimbursement of the plan is not possible.

**IT IS THEREFORE ORDERED** that the Wallace Defendants' crossclaim against Hawk for breach of fiduciary duty is **dismissed** for lack of subject matter jurisdiction. Because this is the only claim pending, a judgment of dismissal is entered herewith.

**IT IS FURTHER ORDERED** that the Wallace Defendants' Objection to the Supplement to Brief of the Hale-Halsell Creditors' Trust (Dkt. # 31) is **granted in part** and **denied in part** and Motion to Strike (Dkt. ## 31, 33) is **denied**.

**IT IS FURTHER ORDERED** that defendant Hawk's Motion and Brief to Correct the Court's Opinion and Order Pursuant to Rule 60(a) Fed. R. Civ. P. (Dkt. # 9) is **moot**.

**DATED** this 19th day of November, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT